# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMY J. PERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-426-RAW-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Tammy J. Perry requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries:  first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied.  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term substantial evidence means "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The Court may not re-weigh the evidence nor substitute its discretion for that of the agency.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born on March 1, 1966, and was forty-one years old at the time of the most recent administrative hearing. She has a high school education plus a beauty college certificate and previously worked as a salad bar attendant and hairstylist. She alleges disability since January 1, 2000, because of rheumatoid arthritis, obesity and bladder incontinence.

**Procedural History**

On August 29, 2001, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Lance Hiltbrand found the claimant was not disabled on August 28, 2003. The claimant appealed the decision to this Court in Case No. CIV-04-064-P, and the decision was reversed and remanded for further proceedings on March 10, 2005. ALJ Hiltbrand conducted a supplemental hearing and issued a partially favorable decision on August 10, 2007. He determined the claimant became disabled on January 1, 2005, but was not disabled before that date. The claimant sought review of the unfavorable portion of the ALJ's decision (for the time period of January 1, 2000 through December 31, 2004), but the Appeals Council denied review so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation for the time period of January 1, 2000, through December 31, 2004. He determined the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, she could lift and/or carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk with normal breaks for six hours in an eight-hour workday; and sit with normal breaks for six hours in an eight-hour workday. She was further limited to only occasional stooping and "ha[d] a mild to moderate level of fatigue and discomfort affecting her ability to perform in a competitive work environment." (Tr. 233). The ALJ concluded that the claimant could return to her past relevant work as a salad bar attendant and hairstylist (Tr. 245-46).

**Review**

The claimant contends that the ALJ erred: (i) by applying the wrong listing criteria to his analysis of the severity of her rheumatoid arthritis; (ii) by improperly disregarding evidence; (iii) by failing to obtain medical expert testimony and not applying the criteria of Social Security Ruling 83-20 to infer an onset date; and, (iv) by failing to consider her urinary incontinence under the proper legal standards. The undersigned Magistrate Judge finds the second and third contentions persuasive.

The record reveals that the claimant was examined by Dr. James Forrestal, D.O., in December 2000. She complained of arthritis pain in both the hands and knees for the past two to three months as well as weakness in her arm muscles. Dr. Forrestal indicated that rheumatoid arthritis needed to be ruled out (Tr. 109). By May 2001, the claimant was

experiencing pain and swelling and having trouble walking. She was taking Celebrex and when she stopped taking the medication, her symptoms became worse. Dr. Forrestal referred the claimant to rheumatologist Dr. Nancy Brown, D.O., in August 2001, after she could hardly walk, her calf muscles cramped, and her joints were swollen (Tr. 108). Dr. Brown noted that the claimant's problems with walking and with her knees began over the last year and a half. The claimant had difficulty sleeping because of pain, morning stiffness, joint pain, muscle weakness and tenderness, and joint swelling. Upon examination, she had a "decreased range of motion in all planes, but particularly in lateral elevation." Dr. Brown determined the claimant had "extremely aggressive and active rheumatoid arthritis" and assessed her with severe rheumatoid arthritis and fatigue and generalized pain. The claimant was prescribed Celebrex, Methotrexate, and Prednisone, and it was suggested she enroll in the indigent program for Enbrel (Tr. 142-44). When the claimant returned to Dr. Brown in September 2001, she reported that she could "get up and down better [but] still ha[d] problems with her knees and ankles." Dr. Brown noted the claimant had "[r]heumatoid factor positive rheumatoid arthritis." (Tr. 141). By October 2001, the claimant was suffering less morning stiffness but still having problems with her knees and ankles. The joints of the claimant's shoulders, elbows, wrists, knees, ankles, and feet were tender upon examination (Tr. 134-35).

  The claimant underwent a physical examination with consultative examiner Dr. Dennis Whitehouse, D.O., in November 2001. The claimant reported to Dr. Whitehouse that she was diagnosed with rheumatoid arthritis in August 2001 but that she was having

problems for some time before that. Upon examination, the claimant exhibited pain in all her joints but no erythema or swelling was noted. The claimant had decreased range of motion in her wrists and significant pain associated with all range of motion testing (Tr. 110-15). When she returned to Dr. Brown in December 2001, she reported doing better overall, but her joints continued to be tender upon examination (Tr. 131). Non-examining agency physician Dr. Luther Woodcock, M.D., reviewed the claimant's medical records in December 2001 and concluded she had the RFC to perform a full range of light work (Tr. 116-23).

The claimant was seen again by Dr. Brown in January 2002, and she indicated the Enbrel had helped but she still was experiencing a lot of pain. Dr. Brown noted some tenderness in claimant's joints, but she believed "her disease process [was] coming under better control." (Tr. 127-28). In February 2002, Dr. Brown opined that the claimant met Listing 1.02 for rheumatoid arthritis and cited a sed rate of 60, positive rheumatoid factor at a titer of 144, and an elevated C-reactive protein rate as support for her finding. Dr. Brown determined the claimant "[could] not work an eight hour day at any level and could not sustain substantial gainful activity." She did not believe the claimant's functional ability would improve with further treatment. She ultimately concluded the claimant's "rheumatoid arthritis [was] very severe, effect[ed] almost all of her joints and cause[d] her to be rendered 100% disabled." (Tr. 126). By March 2002, the claimant reportedly was "feeling good." Her wrists, left knee, and ankles remained tender (Tr. 125). Another non-examining agency physician reviewed the record in April 2002 and determined the claimant could only perform

sedentary work (Tr. 148-54). When the claimant returned to Dr. Brown in May 2002, she reported that her ankles still bothered her (Tr. 165). Her left shoulder, hands, knees, ankles, and feet were all tender in September 2002 (Tr. 161-62). By November 2002, the claimant reported she was stiff in the morning for five to ten minutes and her hands were bothering her. She had tenderness in both shoulders and hands (Tr. 159-60). Dr. Brown noted in January 2003 that she had pain in her knees and hands. She was not taking some of her medication as recommended because of expense and failed to complete renewal paperwork for her Enbrel. The claimant explained to Dr. Brown that she had stopped taking the medication "because God ha[d] told her that he [was] going to heal her." Dr. Brown declined to continue treating the claimant and indicated that she would likely need a referral to another rheumatologist because her arthritis would flare (Tr. 157-58).

The claimant was not examined again for her arthritis until May 2006. She complained to Dr. John Saidi, M.D., of pain and stiffness in all joints. Her heel and toe walking was weak and straight-leg raising was mildly positive on both sides. Range of motion was either normal or mildly decreased in most joints because of pain and stiffness, but there was no swelling or erythema found in any of the joints (Tr. 371-78).

Social Security Ruling 83-20 states that "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. . . . In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." 1983 WL 31249, at *2. "[T]he ALJ should call on the services of a medical

advisor when onset must be inferred." *Id*. at *3. "[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions." *Blea v. Barnhart*, 466 F.3d 903, 912 (10th Cir. 2006). *See also Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous.") [citations omitted] and *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor."). An ambiguity in the evidence is only an issue if it involves the possibility that the onset date was prior to the expiration of insured status. *See*, *e. g.*, *Hill v. Astrue*, 289 Fed. Appx. 289, 294 (10th Cir. 2008) ("Expert testimony is helpful where the ALJ has determined that the claimant eventually became disabled but there is some ambiguity about whether the onset of this disability occurred prior to the expiration of the claimant's insured status."), *citing Blea*, 466 F.3d at 913.

The claimant alleged a onset of disability of January 1, 2000, and her insured status expired on December 31, 2003 (Tr. 230). The ALJ determined the claimant did not become disabled until January 1, 2005. He appears to have reached his conclusion by rejecting the opinions of the claimant's treating rheumatologist Dr. Brown from February 2002 (Tr. 235-41), *i. e.*, that the claimant met Listing 1.02 for rheumatoid arthritis and was disabled and could not work, in favor of the November 2001 examination findings of consulting physician Dr. Whitehouse and the December 2001 RFC assessment from non-examining physician Dr.

-8-

Woodcock that the claimant could perform light work (Tr. 241). In reaching his decision, the ALJ noted: (i) that the evidence does not show that the claimant's condition in January 2003 was any worse than when Dr. Whitehouse examined her in November 2001 (Tr. 242); (ii) that "the absence of medical evidence of treatment subsequent to January 2003, until January 2005, suggests that significant symptomatology may have significantly resolved[;]" (Tr. 242) and, (iii) that "inasmuch as the claimant . . . failed to obtain any subsequent treatment until January 2005, it [was] impossible to determine the progression of such worsening." (Tr. 244).

The Commissioner argues that the ALJ was not required to seek the assistance of a medical advisor under Social Security Ruling 83-20 because the medical evidence was not ambiguous. But the reasons given by the ALJ do nothing more than highlight the ambiguities in the record. First, the medical evidence *does* suggest that the claimant's condition worsened between November 2001 to January 2003. Another non-examining agency physician completed an RFC assessment in April 2002 and determined the claimant was limited to only sedentary work (Tr. 148-54). This assessment was clearly at odds with the November 2001 examination of Dr. Whitehouse and the December 2001 RFC assessment by Dr. Woodcock that the claimant could perform light work. The ALJ should not have ignored this evidence, *see*, *e. g.*, *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted], but he should have instead discussed why

he chose to adopt Dr. Woodcock's opinion over that of the other non-examining agency physician. *See*, *e. g.*, *Shubargo v. Barnhart*, 161 Fed. Appx. 748, 754 (10th Cir. 2005) ("[T]he agency requires ALJs to weigh all medical source opinion evidence and explain in their decision why they rely on a particular non-examining agency expert's opinion when opinions are conflicting. . . . We conclude that this case must be remanded for the ALJ to consider and discuss [the April 2002 non-examining physician's] medical opinion and to explain why he rejected it in favor of other non-examining consultative opinions.") [unpublished opinion], *citing* 20 C.F.R. § 404.1527(f) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004).

Second, even though there was a nearly two-year period where it appears the claimant sought no treatment for her arthritis, it was error for the ALJ to make unsupported inferences from the record, *e. g.*, finding that the claimant's symptoms must have resolved because of the lack of treatment during the time period. *See, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("[A]n ALJ may not make speculative inferences from medical reports and may reject a[n] . . . opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*") [quotation omitted] [emphasis in original]. He should have instead consulted a medical advisor pursuant to Social Security Ruling 83-20. *See Blea*, 466 F.3d at 912-13 ("Mr. Blea's medical record is indisputably incomplete during a pertinent time period, June to December 1998. But, rather than call[ing] on the services of a medical advisor when onset must be inferred, the ALJ made negative inferences against Mr. Blea due to the gap in the medical record. An

ALJ may not make negative inferences from an ambiguous record; rather, [he] must call a medical advisor pursuant to [Social Security Ruling] 83-20.") [internal quotations omitted], *citing* Soc. Sec. Rul. 83-20, 1983 WL 31249, at *3 and *Reid*, 71 F.3d at 374.

Finally, the ALJ himself acknowledged that it was difficult to determine the progression of the claimant's worsening condition. Thus, he should have called upon a medical advisor to infer the onset of disability. *See*, *e. g.*, *Blea*, 466 F.3d at 912 ("[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, *or alternatively, whether the medical evidence clearly documented the progression of his conditions*.") [emphasis added]. *See also Bailey*, 68 F.3d at 79 ("In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor.").

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for compliance with Social Security Ruling 83-20. After the ALJ has called upon a medical advisor to infer the claimant's onset of disability, he should then redetermine the claimant's RFC and what work, if any, she can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the

Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Any objections to this Report and Recommendation must be filed within ten days.

    **DATED** this 9th day of March, 2009.

                                              _____
                                              **STEVEN P. SHREDER**
                                              **UNITED STATES MAGISTRATE JUDGE**